JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

   450 Golden Gate Avenue
   San Francisco, California 94102
   Telephone: (415) 436-6809
   Facsimile: (415) 436-7234
   E-Mail: wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0647 MAG |
| Plaintiff, | ) | |
| | ) | UNITED STATES' SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| MICHEAS LEHNHERR, | ) | Hearing: April 23, 2008 |
| | ) | Time: 9:30 a.m. |
| Defendant. | ) | Courtroom: C, 15th Floor |
| | ) | Hon. Edward M. Chen |

## **I INTRODUCTION**

On January 24, 2008, defendant Micheas Lehnherr pled guilty to Count Two of the United States' Information charging Driving While Under the Influence of Alcohol pursuant to 36 C.F.R. § 1004.23(a)(1). This Court has set April 23, 2008, at 9:30 a.m., as the date for judgment and sentencing. The government submits the following sentencing memorandum to advise the Court of any objections the government has to the presentence report ("PSR") and the government's sentencing recommendation.

## **II. FACTS OF THE CASE**

On September 8, 2007, at approximately 2:32 a.m., U.S. Park Police Officer April Ramos ("Officer Ramos") was on patrol traveling eastbound on Lincoln Boulevard near Long Avenue in

the Presidio when she observed a blue KIA van also traveling eastbound in front of her patrol vehicle. Officer Ramos observed the van swerving into and out of the eastbound lane, continuously accelerating and braking while maintaining a speed below the posted speed limit, and applying the left turn signal without executing a turn. *See* Citation # 0894966, Attached hereto as Exhibit 1. Officer Ramos continued to follow the vehicle until Lincoln Boulevard and Sheridan where she executed a traffic stop. *See* Exhibit 1. As Officer Ramos approached the driver's side door of the van she noticed a strong odor of alcohol emanating from the vehicle. *See* Presentence Report ("PSR") ¶ 6. Officer Ramos noticed the driver had slurred speech, red and watery eyes and a disheveled appearance. PSR ¶ 6. Officer Ramos asked Lehnherr if he'd been drinking and, if so, if he felt the effects of the alcohol. Lehnherr responded that he had consumed one glass of wine and that he had felt the effects of the alcohol and knew that he should not be driving. PSR ¶ 7. Lehnherr also stated that his arms felt numb due to medication he had been taking for a back injury. PSR ¶ 7.

Officer Ramos informed Lehnherr that she would need to administer field sobriety tests to further determine the level of his intoxication. Officer Ramos administered three field sobriety tests which Lehnherr failed and then attempted to administer the Preliminary Alcohol Survey ("P.A.S.") test to the defendant. PSR ¶ 7. Officer Ramos instructed Lehnherr how to blow into the device. *See* Supplemental Police Incident Record, page 2, attached hereto as Exhibit 2. As Lehnherr started to blow into the P.A.S. device he bit down on the mouthpiece several times after being instructed not to. *See* Exhibit 2. Lehnherr held his breath, would not blow out as instructed, continued to stop and ask questions, and appeared confused. *See* Exhibit 2. Officer Ramos considered this to be a refusal and placed Lehnherr under arrest for Driving Under the Influence. *See* Exhibit 2. After Officer Ramos put Lehnherr into her patrol vehicle, MPO Michael Cameron ("Officer Cameron"), who was assisting with the impound of the vehicle, called her attention to broken pieces of white rock on the driver's side seat and floorboard of Lehnherr's vehicle. *See* Exhibit 2. Officer Ramos collected the material, which field tested positive for cocaine using a NIK testing kit. *See* Exhibit 2.

Officer Ramos then transported Lehnherr to the station house for further processing. Officer Ramos read the Chemical Admonition Test to Lehnherr. *See* Exhibit 2. The breath test was administered twice at 3:41 a.m. and 3:45 a.m. *See* Exhibit 2. The first test resulted in a Blood Alcohol Content ("B.A.C.") of .174% and the second test resulted in a B.A.C. of .168%. *See* Exhibit 2. Officer Ramos then issued Lehnherr three citations for possession of cocaine, operating a vehicle under the influence, and operating a vehicle with a B.A.C. greater then .08%. *See* Exhibit 2.

Here, the plea agreement the parties entered into provides for the following conditions: ninety days in an inpatient alcohol treatment program; two years of probation; a $1,000 fine or 125 hours community service; restriction of the defendant's driving privileges for ninety days; successfully completion of a Third Offender's DUI Program; maintenance of proof of responsibility for three years; completion of alcohol and drug assessment and treatment program; and payment of the ten dollar special assessment. Paragraph 9 of the plea agreement states that the defendant agrees "not to commit or attempt to commit any crimes before sentence is imposed" and also agrees "not to violate the terms of my pretrial release". The government notes that the defendant has been arrested for disorderly conduct twice since being arraigned in this case. The first time was on November 7, 2007, in Twin Cities, Marin County. PSR ¶ 26. The second time was on February 24, 2008, in El Cerrito, California, for what appears to be conduct similar to the defendant's conduct in this case. PSR ¶ 27.

On March 12, 2008, a bail review hearing was conducted before the Honorable Bernard Zimmerman at which time defendant's bond was modified to include pretrial supervision and the condition that he reside at Twelve Step Programs, a sober living house in San Francisco. On March 17, 2008, a Form 8 Violation Memorandum was submitted by U.S. Pretrial Services after the defendant failed to return to Twelve Step Programs on March 13, 2008, and was therefore terminated from the program. The Form 8 also alleged that Allen Lew, the defendant's Pretrial Services Officer, had difficulty finding out where the defendant was staying. A second Form 8 was issued on March 18, 2008, indicating that the defendant had been evaluated for eligibility and accepted to Newbridge Foundation but was reticent to start the program for various reasons.

A bail review was conducted before the Honorable Edward M. Chen, at which time the defendant was ordered to enter treatment at Newbridge Foundation. Defendant entered Newbridge on March 24, 2008.

### III. ARGUMENT

A. <u>Factors to Consider in Imposing a Sentence.</u>

As the crimes in this case is are Class B Misdemeanors, the Sentencing Guidelines do not apply. U.S.S.G. § 1B1.9. Though the Court does not have to consider the Sentencing Guidelines, the Court still must consider the following factors under 18 U.S.C. § 3553(a):

1. "the nature and circumstances of the offense and the history and characteristics of the defendant";
2. "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; to deter; "to protect the public . . ."; and to provide rehabilitation;
3. "the kinds of sentences available";
4. "the need to avoid unwarranted sentence disparities among defendants. . ";
5. "the need to provide restitution to any victims of the offense."

The United States Probation Office has recommended a sentence of four years probation, including sixty days of incarceration and ninety days in residential drug treatment to be served as conditions of probation, 125 hours of community service, and driving restrictions.

The government would like to secure the best possible outcome for both the defendant and the interests of public safety by taking every measure possible to ensure the defendant never again gets behind the wheel of a vehicle while he is under the influence of alcohol or a controlled substance. The government believes the best way to do this would be by providing the defendant a prolonged period of inpatient residential treatment.

B. "<u>the history and characteristics of the defendant</u>"

The defendant has a criminal history spanning nearly 20 years including the following: 1989 misdemeanor prowling conviction (PSR ¶ 10), 1989 misdemeanor possession of stolen

U.S. SENTENCING MEMORANDUM
CR 07-0647 MAG                    4

property conviction (PSR ¶ 11), 1993 misdemeanor shoplifting conviction (PSR ¶ 13), 1995 possession of marijuana conviction (PSR ¶ 14), 1996 misdemeanor possession of a controlled substance conviction (PSR ¶ 15), 1998 felony possession of a controlled substance conviction (PSR ¶ 12), 1999 driving while under the influence conviction (PSR ¶ 16), 2000 driving while under the influence conviction (PSR ¶ 17), 2002 driving while under the influence conviction (PSR ¶ 18), and 2003 driving while under the influence conviction (PSR ¶ 19). This case constitutes defendant's fifth conviction for Driving Under the Influence. In light of his lengthy criminal history and recidivism as it relates to driving under the influence, the government strongly believes the defendant needs a substantial period of residential treatment to address his problems with substance abuse.

In addition to defendant's prior convictions, the PSR details several warrants the defendant had outstanding at the inception of this case, from Hawaii District Court, Maine District Court, and in New York City. PSR ¶ 23-25. Since being arraigned on this case, defendant has been arrested twice. PSR ¶ 26-27. The PSR also suggests that the defendant's upbringing was both chaotic and abusive. PSR ¶ 32-33. The government thinks that the defendant would strongly benefit from a prolonged period in treatment, during which time the defendant could address the substance abuse issues that have obviously been plaguing him since his early adulthood.

    C.    "the nature and circumstances of the offense" **and** "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law"

As this is the defendant's fifth DUI, a sentence that includes a period of confinement would certainly be warranted. Defendant's third DUI conviction in 2002 in Marin County Superior Court resulted in a sentence of three months in jail and three years of probation. This is a serious offense and one that the defendant should have learned not to commit years ago. Defendant is "fortunate that he has not ended one of his intoxicated escapades facing a sentence for manslaughter or second degree murder." United States v. Gibson, 896 F.2d 206 (6th Cir. 1990)(the decision to impose consecutive sentences was not an abuse of discretion where

U.S. SENTENCING MEMORANDUM
CR 07-0647 MAG                    5

1  defendant had been convicted nine times for driving under the influence of alcohol).  Thus to
2  promote respect for the law, to provide punishment for the offense, and to deter the defendant
3  from a sixth or seventh DUI conviction, the Court should impose a sentence that reflects that the
4  Court does not take driving under the influence lightly.  This is especially true in the light of the
5  fact that this Court released the defendant on a $10,000 unsecured bond on November 21, 2007,
6  and ordered the defendant to refrain from the use of alcohol.  The defendant clearly violated the
7  conditions of his pretrial release when he was arrested for his sixth DUI on February 24, 2008, in
8  El Cerrito. PSR ¶ 27.

9        D.    "the kinds of sentences available";

10        The government agrees with the United States Probation Officer's assessment that the
11  maximum term of imprisonment allowable is six months and the maximum period of probation
12  allowable is five years.  36 C.F.R. § 1001.3; 18 U.S.C. § 3561(c)(2).  The Court may also require
13  the defendant abide by discretionary conditions of probation, including that the defendant
14  participate in employment or schooling (18 U.S.C. § 3563(b)(4)), undergo psychiatric or
15  substance abuse treatment (18 U.S.C. § 3563(b)(9)), intermittent incarceration (18 U.S.C. §
16  3563(b)(10)), and confinement in a residential program or halfway house (18 U.S.C. §
17  3563(b)(11)).

18        Here, the Probation Officer has recommended four years probation with 60 days in
19  custody and 90 days in residential drug treatment.  The government believes that 90 days
20  treatment is inadequate given how far back the defendant's substance abuse issues go but
21  acknowledges that the Court's sentencing options are limited by what we can provide for him
22  given resource constraints.  Ultimately, the government recommends that the Court's sentence
23  include 90 days of treatment and that the Court set a post-sentencing status hearing at the
24  completion of defendant's first 90 days of treatment.  At that time, if the defendant has
25  succeeded in his inpatient treatment, the parties can explore whether further treatment options
26  are available to the defendant.  In the alternative, if the defendant fails to successfully complete
27  treatment and drops out or is expelled from the program at Newbridge (or tests dirty or otherwise
28  violates the standard probation conditions), then the Court could impose a custodial sentence in

line with Probation's recommendation. Any failure to successfully complete treatment at Newbridge will constitute a violation of the terms of Probation, which will allow the Court to revoke or modify the defendant's probation and re-sentence the defendant to a term of custody. There are various factors that may weigh on the Court's decision-making that the government would like to bring to the Court's attention.

### 1. Defendant's Marin County Case.

The defendant was arrested in Twin Cities, Marin County, on November 7, 2007, for disorderly conduct. PSR ¶ 26 (Marin County Superior Court Docket # SC156437A). On April 14, 2008, government counsel spoke to the Assistant District Attorney handling that case, Jack Ryder ("ADA Ryder"), about how that case was proceeding. According to ADA Ryder, a search of the defendant at the time of his arrest yielded approximately 3.5 grams of cocaine. A preliminary hearing date for felony possession of a controlled substance charges under California Health & Safety Code section 11350 has been set for May 7, 2008. According to ADA Ryder, the defendant is ineligible for a deferred entry of judgment disposition because of his criminal history but may still be eligible under Proposition 36[1] for a second tier drug diversion. In the event the defendant was sentenced pursuant to Proposition 36 in Marin County, he would be allowed day for day credit in a treatment program.

### 2. Defendant's Current Treatment Status.

The defendant entered Newbridge on March 24, 2008. PSR ¶ 3. His treatment is currently being supervised by Pretrial Services. Here, the Court may sentence the defendant to 90 days of inpatient treatment to be supervised by U.S. Probation consecutive to the treatment he has already completed or may give him credit for the approximately 30 days of treatment the defendant will have completed by the date of sentencing on April 23, 2008. The government would request that the Court not give the defendant credit for the time he has already completed

---

[1] California Proposition 36, the Substance Abuse and Crime Prevention Act of 2000, also known as Prop 36, changed state law to allow first- and second-time nonviolent, simple drug possession offenders the opportunity to receive substance abuse treatment instead of incarceration. As a condition of their probation, defendants are required to participate in and complete a licensed and/or certified community drug treatment program. If the defendant fails to complete this program or violates any other term or condition of their probation, then probation can be revoked and the defendant may be required to serve an additional sentence which may include incarceration.

U.S. SENTENCING MEMORANDUM
CR 07-0647 MAG                    7

1  in treatment and instead impose any term of treatment consecutive to the approximately 30 days
2  the defendant will have completed by the sentencing date.

### 3. Possible Future Treatment Options for the Defendant.

Government counsel has conferred with the U.S. Probation Officer about defendant's treatment options. It is the government's understanding that the maximum term of treatment that U.S. Probation can currently pay for is 90 days. The government also understands that there are often wait-lists for many treatment programs. In the event the defendant enters a plea on his Marin County case, he may be sentenced to a treatment program, in which case Marin County would likely require any treatment be consecutive to the treatment he is currently receiving. Marin County would also assume the cost of additional treatment. The government also understands that Alameda County, where Newbridge is located, does sometimes have county beds available for defendants who complete 90 days residential treatment but want to continue their inpatient treatment.

### E. "the need to avoid unwarranted sentence disparities among defendants"

Because this is the defendant's fifth DUI conviction, a sentence that includes some kind of confinement, be it drug treatment or incarceration, is certainly warranted. The PSR report made clear that, in state court, a fifth time DUI conviction would likely result in a state prison sentence between 180 days and one year, designation as a habitual traffic offender, a 30 month DUI program, and license suspension for four years. PSR ¶ 43; California Veh. Code §§ 23550, 23152, and 13352(7); Cal. H. & S. Code § 11836. Any sentence this Court may impose, given that the maximum term of imprisonment is six months in jail, will be reasonable in light of what the defendant could have received in another jurisdiction.

### IV.  CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a period of probation that includes an initial 90 days in treatment, and that the Court should set a post-sentencing status hearing. The defendant's conduct during his first 90 days in treatment will inform the parties on whether the defendant is on the road to recovery. If the defendant has successfully completed his 90 days of residential treatment, the parties can evaluate what further

U.S. SENTENCING MEMORANDUM
CR 07-0647 MAG                                              8

treatment options are available to the defendant. In the alternative, if the defendant fails to successfully complete his 90 days in treatment, the government will recommend the Court modify the defendant's probation and impose a term of incarceration as a condition of probation as recommended by Probation.

DATED: April 14, 2008                           Respectfully submitted,

                                             JOSEPH P. RUSSONIELLO
                                             United States Attorney

                                                      /s/
                                             WENDY THOMAS
                                             Special Assistant United States Attorney